UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                    Case No. 04-80843
                                                          Hon. Mark A. Goldsmith

vs.

DOUGLAS MICHAEL KORNACKI,

        Defendant.

_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Dkt. 121)**

Defendant Douglas Michael Kornacki pleaded guilty to two counts of use and discharge of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). See Judgment (Dkt. 107). On February 8, 2007, Judge John Corbett O'Meara sentenced Kornacki to 120 months on the first count and 300 months on the second count, to run consecutively (and thus totaling 420 months). Id.[1] Kornacki, age 56, effectively began serving his custodial sentence in November 2004, when he was arrested and ordered detained pending trial. He is now incarcerated at the Leavenworth U.S. Penitentiary in Leavenworth, Kansas. Kornacki's projected release date is March 13, 2035.

On October 26, 2020, Kornacki filed the instant motion for compassionate release, arguing that a sentence reduction or immediate release is justified due to (i) his health conditions—which, as listed by Kornacki, include asthma, high blood pressure, hypertension, acid reflux, high cholesterol, arthritis, and deteriorating eyesight—or (ii) the First Step Act's ("FSA's") amendment

---

[1] This case was reassigned to the undersigned on February 15, 2019.

of § 924(c)'s mandatory sentence stacking provisions. For the reasons that follow, the Court denies Kornacki's motion.

## I. BACKGROUND

From September to October of 2004, Kornacki committed several violent armed robberies of various businesses. In each instance, Kornacki used a sawed-off 12-gauge shotgun, discharged the shotgun in the place of business while demanding money from and threatening employees, and, after obtaining the money, fled the scene. See Plea Agreement at 2-4 (Dkt. 102). Within minutes of fleeing the scene of the last robbery, police officers located and attempted to stop the fleeing getaway vehicle. Id. at 3-4. The driver, Kornacki's wife, slowed the car almost to a stop, but then accelerated as Kornacki fired his shotgun at the officers, who had exited their patrol vehicles. Id. at 4. Kornacki's wife continued to drive at a high rate of speed as Kornacki fired five additional shots at the officers in an attempt to escape. Id. According to the presentence report, two of his shots hit one of the patrol vehicles.

Kornacki was arrested after his car hit a street sign and crashed. He was subsequently charged with one count of bank robbery, two counts of Hobbs Act robbery, three counts of discharging a firearm during and in relation to a crime of violence, and five illegal firearms possession charges. See Superseding Indictment (Dkt. 24). On the second day of his trial, September 27, 2006, Kornacki pleaded guilty to two of the § 924(c) counts pursuant to a Rule 11 plea agreement. See Plea Agreement. Although the applicable sentencing range for the § 924(c) convictions under the U.S. Sentencing Guidelines was 360 months to life, Kornacki and the Government agreed to a sentence of 420 months. Id. at 4-5. In exchange for Kornacki's plea, the Government dismissed the remaining nine counts against Kornacki. Id. at 7.

Because Kornacki was sentenced under the prior version of § 924(c), the statute's now

defunct "stacking" provision applied. Pursuant to this provision, Kornacki's second § 924(c) conviction carried a mandatory sentence of 25 years that would be "stacked" on top of the 10 years for Kornacki's first § 924(c), resulting in a total sentence of 35 years. The parties agree that, if sentenced today, Kornacki would have been sentenced to a total of 20 years for the two § 924(c) counts. The Government represents that "[i]f the law had required only 10 years for each count of 924(c) in 2006 as it does today, the government, fully prepared for and engaged in trial, would not have agreed to guilty pleas to only two counts and a sentence of only 20 years" because "[a] twenty-year sentence was not, and is not, sufficient to protect the public, reflect the seriousness of Kornacki's offenses, or provide adequate deterrence." Resp. at 21-22 (Dkt. 123).

## II. LEGAL STANDARD

The FSA modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003-1004 (6th Cir. 2020). Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must "find" that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at

3

1109. It further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

Although courts are not required to consider § 1B1.13 in ruling on compassionate release motions brought directly by inmates, United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021), § 1B1.13 still provides a useful working definition of "extraordinary and compelling reasons," and thus may be consulted to "guide discretion without being conclusive," United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (citing Gall v. United States, 552 U.S. 38, 49-50 (2007); Kimbrough v. United States, 552 U.S. 85 (2007)).

In the commentary to § 1B1.13, the Sentencing Commission has enumerated several extraordinary and compelling reasons justifying a reduction of sentence, including the "Medical Condition of the Defendant," "Age of the Defendant," and "Family Circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C). Some examples of compelling reasons are medical conditions "with an end of life trajectory," a defendant's serious physical deterioration related to the aging process, and death or incapacitation of a caregiver of a defendant's minor child or children. Id. The Guidelines also contemplate "Other Reasons" where the defendant has "extraordinary and compelling reasons other than, or in combination with," the other enumerated reasons. U.S.S.G. 1B1.13 cmt. n.1(D). "Beyond the extraordinary-and-compelling-reasons requirement, this policy statement also requires a district court to find that 'the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" Ruffin, 2020 WL 6268582, at *4 (quoting U.S.S.G. 1B1.13(2)-(3)).

4

### III. ANALYSIS

#### A. Extraordinary and Compelling Circumstances

Kornacki argues that his health conditions or statutory changes to § 924(c)'s stacking provision constitute extraordinary and compelling circumstances warranting a reduction in his sentence or immediate release. The Court addresses each argument in turn and concludes that Kornacki has failed to show extraordinary and compelling circumstances.

##### i. Health Conditions

Kornacki argues that he has the following health conditions: asthma, high blood pressure, hypertension, acid reflux, high cholesterol, arthritis and deteriorating eyesight. It is unclear from Kornacki's brief whether he is arguing that these health conditions alone constitute "extraordinary and compelling" circumstances for release, or whether he is arguing that these health conditions, in combination with the COVID-19 pandemic, constitute extraordinary and compelling circumstances for release.

To the extent that Kornacki is arguing that his health conditions alone constitute extraordinary and compelling circumstances for release, this argument is easily rejected. While the medical condition of a defendant may in certain circumstances establish the requisite extraordinary and compelling reasons, Kornacki has not shown that he "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or "is suffering from a serious physical or medical condition, . . . serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1.

The Government appears to interpret Kornacki's argument as an argument that his health conditions place him at higher risk of contracting COVID-19, as the Government argues that "these ailments are not on the [Centers for Disease Prevention and Control's ("CDC's")] updated list of conditions that are <u>known</u> to place individuals at a higher risk of severe illness from Covid-19." Resp. at 17 (emphasis in original). To the extent Kornacki is arguing such, the Court agrees with the Government that Kornacki's health conditions do not definitively place him at higher risk of severe illness from COVID-19, and thus do not supply the requisite extraordinary and compelling reasons for release.

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. <u>United States v. Ramadan</u>, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus. <u>See id.</u> To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the CDC.

None of Kornacki's specified health conditions is identified as a high-risk factor by the CDC. The CDC has not identified acid reflux, high cholesterol, arthritis, and deteriorating eyesight as high-risk factors.[2] Further, although the CDC has identified moderate-to-severe asthma and hypertension/high blood pressures as factors that "might" increase an individual's risk of contracting the virus, the CDC has not designated these conditions as high risk factors that definitively increase an individual's risk. <u>See id.</u> In any event, Kornacki's medical records cast

---

[2] <u>See</u> "People with Certain Medical Conditions" (CDC): https://perma.cc/T9AG-X4SL.

serious doubt as to whether he even has high blood pressure or moderate-to-severe asthma. Kornacki's hypertension/blood pressure appears to be well managed with medication; according to his medical records, his most recent blood pressure reading from September 2020 was normal. Ex. D to Resp. at 1 (Dkt. 123-1). Although the exact severity of Kornacki's asthma is unspecified, his medical records indicate that it is easily managed with an inhaler. Medical Records, Exs. A-D to Resp. (Dkt. 123-1). Since being prescribed an inhaler in 2017, Kornacki has not suffered any asthma attacks. See id.; see also United States v. Harris, No. 17-20485, 2020 WL 4788027, at *3 (E.D. Mich. Aug. 18, 2020 (holding that a defendant with asthma in "remission" did not warrant compassionate release). As a result, it would be speculative to say that Kornacki's asthma and hypertension/blood pressure conditions render him high-risk for severe illness from COVID-19.

For these reasons, Kornacki has not shown that he has any medical conditions constituting extraordinary and compelling reasons for granting compassionate release.

### ii. Statutory Changes to § 924(c)'s Stacking Provision

Prior to the FSA, § 924(c) imposed mandatory minimum sentences for using or carrying a firearm in connection with a crime of violence: for a first offense, a five- to ten-year mandatory minimum, depending on the circumstances; and for a subsequent conviction, a consecutive 25-year mandatory minimum. A conviction was treated as "second or subsequent," triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case. See Deal v. United States, 508 U.S. 129, 132 (1993). The FSA ended this practice, known as sentence "stacking," by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already "has become final." § 403(a), 132 Stat. at 5222. In other words, under § 403 of the FSA, the 25-year mandatory minimum is reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution.

Because Kornacki was sentenced prior to the passage of the FSA, his sentence was enhanced to a total of 35 years pursuant to § 924(c) for using and discharging a firearm during and in relation to a crime of violence. If Kornacki were sentenced today, he would be sentenced to 10 years for each § 924(c) count, for a total of 20 years. Kornacki argues that the disparity between his sentence and the sentence he would face today is an extraordinary and compelling reason to reduce his sentence. In response, the Government argues that the statutory changes to § 924(c) cannot constitute extraordinary and compelling reasons for release because Congress did not make the amendments to § 924(c)'s stacking provision retroactive.

The Government is correct that the statutory changes to § 924(c) were not made retroactive. Nonetheless, at least two circuit courts have found that this statutory change eliminating such lengthy mandatory sentences, in combination with additional individual factors, constitutes an extraordinary and compelling reason to reduce a sentence. United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020); United States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020)). Numerous district courts have reached the same conclusion. See United States v. McDonel, No. 07-20189, 2021 WL 120935, at *4 (E.D. Mich. Jan. 13, 2021) (collecting cases), appeal filed, No. 21-1152 (6th Cir. Feb. 16, 2021).

Additional individual factors include a defendant's lack of a criminal history, youth at the time of the commission of the crime, health conditions, rehabilitation efforts, and prison behavior. For instance, in McDonel, another court within this district granted a motion seeking a sentence reduction due to the § 924(c) changes, and justified the reduction on the following combination of factors: (i) the defendant's current sentence (107 years) was more than three times the mandatory minimum sentence he would face if sentenced today (35 years); (ii) the defendant was notably young when he committed his crime (19 years old) and received a sentence effectively committing

him to spend his life in prison; (iii) the defendant had no prior criminal history; (iv) the defendant's post-conviction record reflected efforts towards rehabilitation; and (v) the defendant's prison disciplinary record reflected no infractions for the immediate 7 years preceding the filing of the motion for compassionate release. 2021 WL 120935 at *4-5. Likewise, in United States v. Taniguchi, another court within this circuit granted a motion seeking a sentence reduction due to the § 924(c) changes, justifying the reduction on the following combination of factors: (i) the defendant would receive "dramatically different sentence today" (i.e., 24 years instead of 42 years), (ii) the defendant had already served 20 years, (iii) the defendant's health conditions (which included hypertension and cardiovascular issues) placed him at an increased risk of severe illness from COVID-19, and (iv) the defendant demonstrated efforts towards rehabilitation while incarcerated. No. 00-50, 2020 WL 6390061, at *5 (S.D. Ohio Nov. 2, 2020).

In this case, the Court struggles to find any additional individual factors that would justify a reduction in Kornacki's sentence in combination with the § 924(c) changes. In terms of criminal history, Kornacki's is extensive. His criminal history dates back to 1983 and includes multiple convictions for violent crimes such as aggravated assault and battery on a law enforcement officer. In terms of youth, Kornacki was approximately 39 years old when he committed the instant offense—not a notably young age. Cf. McDonel, 2021 WL 120935 at *4-5 (holding defendant was young when he committed a crime at the age of 19). In terms of rehabilitation efforts and prison behavior, Kornacki has participated in some drug and alcohol programs while in prison but has not maintained a clean disciplinary record. As recently as February 2020—just one year ago—Kornacki was disciplined for possessing drugs/alcohol. See Inmate Discipline Data, Ex. E to Resp. at 1 (Dkt. 123-2). Finally, in terms of health conditions, Kornacki points to a few conditions that "might" increase his risk of severe illness from COVID-19 (namely, hypertension/high blood

9

pressure and unspecified asthma). However, these health conditions are insufficient to single-handedly support finding that additional individual factors exist to justify a sentence reduction, as these health conditions do not definitively place Kornacki at higher risk of severe illness from COVID-19 – especially in light of the fact that his medical records state his blood pressure and asthma are well managed.

In short, although the statutory changes to § 924(c) <u>in combination</u> with additional individual factors can constitute extraordinary and compelling reasons justifying a sentence reduction, Kornacki has not shown that any additional individual factors support granting a sentence reduction or immediate release.

### B. Section 3553(a) Factors

Moreover, the § 3553(a) factors weigh strongly against granting Kornacki release or a sentence reduction. Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses and the need to promote respect for the law, and the need to protect the public from further crimes by the defendant. As discussed above, Kornacki has a lengthy and violent criminal history dating back to 1983. The length of Kornacki's criminal history raises serious doubts as to his ability to be rehabilitated as well as his ability to be deterred from committing future crimes. The seriousness of Kornacki's past offenses is reflected by the fact that Kornacki's criminal history category is the highest category under the U.S. Sentencing Guidelines, category VI.

The current offense for which Kornacki is incarcerated likewise involves serious violence. Kornacki used a sawed-off shotgun in the commission of each robbery. He fired the shotgun in each store that he robbed, thereby endangering the lives of those in the respective stores. Further,

in attempting to escape capture after committing the last robbery, Kornacki fired at least six shots at police officers. The nature and circumstances of Kornacki's instant offense demonstrate a gross disregard for human life.

Kornacki has established, through his instant offense and extensive criminal history, that he is a danger to the community. His post-conviction prison behavior, which includes a recent infraction for drug/alcohol possession, reflects Kornacki's ongoing disrespect for authority. Releasing Kornacki now (or reducing his sentence to result in an earlier release date) would not promote respect for the law or protect the public from further crimes by Kornacki. For these reasons, the § 3553(a) factors weigh decidedly against granting Kornacki's motion for a compassionate release.

### IV. CONCLUSION

For the reasons stated above, Kornacki's motion for compassionate release (Dkt. 121) is denied.

SO ORDERED.

Dated: March 2, 2021  　　　　　　　　　　　s/Mark A. Goldsmith  
　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH  
　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 2, 2021.

　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky  
　　　　　　　　　　　　　　　　　　　　　Case Manager